IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:24-CR-00293-M

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JESSE NATHAN METCALF,

      Defendant.

ORDER

This order serves to memorialize the court's findings and orders from the pretrial conference held on March 12, 2026. First, the court GRANTED the United States' Motion in Limine to Exclude Expert Psychological Testimony. DE 66. Second, the court GRANTED the United States' Motion to Quash Subpoena. DE 67. Third, the court GRANTED Defendant's *pro se* motion to have new counsel appointed and, accordingly, CONTINUED the trial in this matter. The court explains each of those orders in greater detail below.

## I. The United States' Motion to Exclude [DE 66]

### A. Background

Defendant is charged via the second superseding indictment, DE 1, with twelve counts of transmitting threats in interstate commerce in violation of 18 U.S.C. § 875(c). Based on the second superseding indictment, Defendant made all twelve communications to his father. DE 1. To sustain its burden for each of the twelve counts, the United States will be required to show "(1) that the defendant knowingly transmitted a communication in interstate or foreign commerce; (2) that the defendant subjectively intended the communication as a threat; and (3) that the content of

Case 5:24-cr-00293-M-RJ   Document 70   Filed 03/16/26   Page 1 of 13

the communication contained a 'true threat' to kidnap or injure." *United States v. White*, 810 F.3d 212, 220–21 (4th Cir. 2016).

Upon the motion of Defendant's first attorney, this court ordered Defendant committed for a competency evaluation pursuant to 18 U.S.C. § 4241. DE 26. About four and a half months later the court received a forensic evaluation prepared by Dr. Justin Riggsbee, Ph.D, Psy.D., a psychologist employed by the Bureau of Prisons. DE 31. Dr. Riggsbee diagnosed Mr. Metcalf with "Narcissistic Personality Disorder" (NPD) and opined that Mr. Metcalf was competent to stand trial. DE 31 at 16, 19.

Recently, counsel for Defendant emailed the United States to explain that counsel had conducted a telephonic interview with Dr. Riggsbee and intended to call Dr. Riggsbee at trial to offer "testimony explaining his diagnosis" of Defendant. DE 66 at 1. When asked by the United States to "proffer the anticipated testimony," counsel for Defendant replied

> I want Rigsbee to state he evaluated him in August 2025. He had the opinion that in August 2025, [Defendant] had narcissistic personality disorder. Explain what NPD is and what observable behaviors supported his opinion. All goes to [Defendant's] state of mind and whether he intended his words to his dad to be a threat.

DE 66 at 2. The United States then moved to exclude that testimony, arguing that the intended testimony is "barred by the Insanity Defense Reform Act," ("IDRA") DE 66 at 2–6, and inadmissible under the Federal Rules of Evidence, DE 66 at 7–9. The Government also explains the intended testimony should be excluded because counsel for Defendant did not comply with the procedural requirements of Rule 12.2 of the Federal Rules of Criminal Procedure. DE 66 at 6–7.

### B. The Insanity Defense Reform Act

The IDRA precludes the admission of Dr. Riggsbee's intended testimony. Under the IDRA, "[i]t is an affirmative defense . . . that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate

2

the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense." 18 U.S.C. § 17(a) (emphasis added). The IDRA "leaves no room for a defense that raises any form of legal excuse based upon one's lack of volitional control *including* a diminished ability or failure to reflect adequately upon the consequences or nature of one's actions." *United States v. Worrell*, 313 F.3d 867, 872 (4th Cir. 2002). (emphasis added).

In addressing the contours of the IDRA, the Fourth Circuit has distinguished the "rare" case where "mental health evidence is presented to negate the specific intent element of a specific intent crime," from the impermissible use of mental health evidence to "establish lack of volitional control generally." *United States v. Hudak*, 156 F.4th 405, 410 (4th Cir. 2025); *see also Worrell*, 313 F.3d at 875. The Fourth Circuit illustrated this distinction by pointing to *United States v. Staggs* as possibly such a rare case. *Worrell*. 313 F.3d at 873; *see also United States v. Staggs*, 553 F.2d 1073, 1076 (7th Cir. 1977) (overturned on other grounds). In *Staggs*, when federal agents attempted to arrest the defendant, they encountered him "standing in the corner [and] . . . holding a gun with both hands," which the arresting agents alleged was "pointed at" them. *Staggs*, 553 F.2d at 1074. In his defense, the defendant sought to introduce expert testimony "that the defendant was a person more likely to want to harm himself than to think about directing his aggressions toward others." *Id.* at 1076. The Fourth Circuit explained this testimony "would potentially be permissible under the IDRA . . . because it was offered 'to show he did not do it, not that he could not help it.'" *Hudak* 156 F.4th at 410 (quoting *Worrell*, 313 F.3d at 874).

Thus, consistent with *Worrell*, the IDRA does not bar evidence of a defendant's mental health where that testimony specifically indicates that the defendant *did not* form a specific intent. But the instant that proffered testimony crosses into arguing that a defendant *could not* form a specific intent, the IDRA will not permit it. And reviewing courts must be careful to ensure

3

themselves that the proffered testimony is "not simply diminished capacity evidence . . . in disguise." *Worrell* at 873. This careful review asks that trial courts be sure the evidence speaks to a defendant's intent. For example, in *Worrell*, the defendant argued that the IDRA did not preclude his intended "expert testimony," which would have shown "that as a result of his impaired mental state, he did not possess the specific intent necessary to commit the offense of conviction." *Id.* at 872. The Fourth Circuit, however, explained that the district court did not err in excluding the testimony; "[b]ecause [the expert opinion] [did] not address [the defendant's] intent to" commit the offense, the testimony would have been "precisely the kind of psychiatric evidence that IDRA precludes." *Id.* at 874–75.

In his communications with the United States, counsel for Defendant argued that Dr. Riggsbee's testimony about the diagnosis of NPD "goes to [Defendant's] state of mind and whether he intended his words to his dad to be a threat." DE 66 at 1. At the Pretrial Conference, counsel for Defendant explained that because "the First Amendment still requires proof that the Defendant had some subjective understanding of the threatening nature of his statements," testimony about Defendant's NPD would "add[] clarity to the jury," in their determination of Defendant's intent. Trans. at 6. In other words, Defendant argued that Dr. Riggsbee's testimony should be admissible because this is one of the "rare" cases contemplated by *Worrell*.

Not every defendant who suffers from mental health issues will present such a rare case, however, and there is insufficient evidence before the court to conclude that Dr. Riggsbee's intended testimony would fit *Worrell's* narrow exception. Dr. Riggsbee's forensic evaluation contains no opinion relevant to Defendant's specific intent at the time of the offense. *See generally* DE 31. Dr. Riggsbee diagnosed Defendant with NPD and explained, "[t]he presentation of narcissistic personality disorder is highly variable." DE 31 at 13. In Defendant's case, Dr.

4

Riggsbee described Defendant's NPD as presenting "a grandiose sense of self-importance," and "a sense of entitlement." DE 31 at 14. Although "[D]efendant presented with delusional thinking . . . include[ing] his stated beliefs about conspiracies against him," Dr. Riggsbee did not believe sufficient evidence supported a diagnosis of "delusional disorder." DE 31 at 15. Dr. Riggsbee described Defendant, instead, as "tak[ing] liberties with facts in order to have them comport to his desired outcome." DE 31 at 18.

As the United States argues, nothing in Defendant's diagnosis or presentation "impair[s] cognition, perception of reality, or understanding of how words are received by others." DE 66 at 7. Unlike the Defendant in *Staggs*, whose apparent suicidal tendencies made it more likely he meant to kill himself then the arresting agents, Defendant's mental health issues do not make it more or less likely that he made his statements "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat, or . . . with reckless disregard for the likelihood that the communication will be viewed as a threat." *White*, 810 F.3d at 221 (citation omitted) (internal quotations omitted); *see also Elonis v. United States*, 575 U.S. 723, 739–41 (2015); *Counterman v. Colorado*, 600 U.S. 66, 82 (2023).

To that end, courts have generally hesitated to admit expert testimony regarding a defendant's NPD for the purpose of rebutting specific intent crimes. *See, e.g., United States v. Peninger*, 456 F. App'x 214, 216 (4th Cir. 2011) ("The evidence of Peninger's [Narcissistic Personality Disorder] did not negate the specific intent to defraud his victims. . . . because it . . . [is] a suggestion for *why* he committed fraud or why he could not help himself commit fraud."); *United States v. Rinaldi*, 461 F.3d 922, 927 (7th Cir. 2006) ("[W]hile Rinaldi did have a narcissistic personality disorder, the defendant presented no mental defect that would prevent him from possessing the necessary *mens rea* for the crime."). Where courts have admitted evidence of a

5

defendant's NPD, the relevant evidence tends to indicate that a specific defendant's NPD presents in a uniquely severe manner as to impair cognition. *Cf. United States v. Cohen*, 510 F.3d 1114, 1125 (9th Cir. 2007) ("According to his expert's report, a narcissistic personality disorder like Cohen's can cause a person to continue to believe something to be true despite overwhelming evidence of its patent absurdity."). However, nothing in Dr. Riggsbee's report indicates that Defendant's NPD impairs his cognition.

Moreover, the report's limitations give the court cause for concern that Dr. Riggsbee's testimony will function as little more than a "back-door" diminished capacity defense. Dr. Riggsbee authored his report for the limited purpose of determining Defendant's competency to stand trial. DE 31 at 1; 18 U.S.C. § 4241. Likewise, Dr. Riggsbee had limited opportunity to assess anything beyond Defendant's competency for trial because Defendant was an unwilling participant in his interviews with Dr. Riggsbee. *See* DE 31 at 3 ("[Defendant] ultimately declined to be interviewed regarding competency-specific matters."), 9 ("[Defendant] repeatedly voiced hius disagreement with the current evaluation and stated he was considering not participating in the evaluation process."), 10 ("[Defendant] expressed it was his intent not to participate in the current evaluation, informing me he did not want me to have enough information to arrive at a conclusion other than that he is competent to stand trial."), 11 ("[D]efendant told me he was willing to provide me with information about his background, although he declined to respond to questions related to his competency to stand trial."), 12 ("[Defendant] declined to complete psychological testing during the evaluation period."), and 15 ("I did consider he may purposefully not be sharing such information with me due to his apparent desire to be found competent to stand trial."). These limitations worry the court. As Dr. Riggsbee's report neither makes, nor had the opportunity to make, an inquiry into Defendant's state of mind at the time of the alleged offense, any testimony based on the report will simply deliver impermissible "diminished capacity evidence . . . in disguise." *Worrell*, 313 F.3d at 873, *see also*

6

874–75 ("Because Dr. Corvin's opinion, as summarized in his letter to defense counsel, does not address Worrell's intent to mail the letters and therefore fails to negate the specific intent required under § 876, we are left with precisely the kind of psychiatric evidence that IDRA precludes.).

For those reasons, the IDRA prohibits the admission of Dr. Riggsbee's intended testimony, and the United States' Motion in Limine is GRANTED. DE 66.

### C. The Rule 401/403 Balancing Test

Even if Dr. Riggsbee's testimony were not precluded by the IDRA, the court would still exclude it under Rule 403 of the Federal Rules of Evidence. Relevant evidence should be admitted, and "evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. However, the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. These two rules operate as a balancing test; relevant evidence should be admitted unless its relevance is outweighed by one of the 403 dangers.

Allowing Dr. Riggsbee's testimony regarding Defendant's NPD would substantially risk confusing the jury; as the government argues, the jury may "conflate a personality disorder with a legal excuse or diminished responsibility, despite the unavailability of such defense under federal law," or "give [the clinical diagnosis] undue weight [because of its aura of scientific authority] on the question of intent, even though it is legally irrelevant." DE 66 at 7. Likewise, any discussion of the defendant's NPD may invite the jury to treat it as a psychological justification for his actions. That possibility also invites a risk of unfair prejudice.

This risk significantly outweighs any probative value which would be offered by Dr. Riggsbee's testimony. As the court explained at the pretrial conference, the "nature of" Dr. Riggsbee's "examination" gives his report and opinions only "marginal" relevance and probative

7

value; in particular, "Defendant's unwillingness to fully participate in that examination" deprived Dr. Riggsbee of any opportunity "to have a meaningful appreciation of how NPD and [Defendant's] behavior might interact in this case." Trans. at 8. Thus, Dr. Riggsbee's report does not indicate any direct link between Dr. Riggsbee's knowledge, diagnosis, or opinion and Defendant's state of mind at the time of his offense. Any minimal probative value that remains cannot possibly outweigh the substantial risks that this sort of testimony invites. *Cf. United States v. Mayes*, 2026 WL 637420, at *4 (E.D.N.C. Feb. 24, 2026) ("Furthermore, whatever the minimal relevance of Hilkey's expert testimony, it is substantially outweighed by a risk of confusing the issues and misleading the jury."); *United States v. Dupre*, 339 F. Supp. 2d 534, 540 (S.D.N.Y. 2004) ("There are special concerns for relevance and potential jury confusion in the case of expert testimony regarding mental disease evidence offered in an attempt to negate the intent element of an offense.").

For those reasons, even if the IDRA permitted the admission of Dr. Riggsbee's testimony, the court would still exclude it under Rule 403 of the Federal Rules of Evidence.

Moreover, the court notes that Defendant did not comply with Rule 12.2's procedural requirements, which would independently justify exclusion. Because he "intend[ed] to introduce expert evidence relating to a mental disease or defect . . . bearing on . . . the issue of guilt," Defendant was required to "notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk." Fed. R. Crim. P. 12.2(b). "The court may exclude any expert evidence from the defendant on the issue of the defendant's mental disease, . . . bearing on the defendant's guilt . . . if the defendant fails to . . . give notice under Rule 12.2(b)" Fed. R. Crim. P. 12.2(d)(1)(A). Defendant neither complied with 12.2's procedural requirements, sought the court's leave to proceed without complying, nor offered any explanation for his non-compliance.

While that non-compliance does not serve as the basis for this exclusion, it does add weight in favor of the court's determination. Rule 12.2's requirements serve an important role; they ensure both the court and the government have adequate "time to prepare to meet the issue, which will usually require reliance upon expert testimony." Fed. R. Crim. P. 12.2, Notes of Advisory Committee on Rules–1974. The rule recognizes that this sort of mental health evidence poses several thorny issues (which with the court has had to grapple on an expedited basis here) and seeks to ensure appropriate time to address them. As a result, the court does not lightly excuse non-compliance with Rule 12.2. In this case, Defendant has sought to introduce testimony rendered inadmissible by both the IDRA and Rules of Evidence, and Defendant has made this attempt without complying with Rule 12.2's procedural safeguards. The court will not admit such evidence, especially in light of these circumstances.

## II. The United States' Motion to Quash

Following filing of the government's motion in limine, DE 66, counsel for Defendant served Dr. Riggsbee with a subpoena, which the government has now moved to quash [DE 67].

### A. Applicable Standards

Executive agencies "may prescribe regulations for the government of [their] department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301. That authority includes the authority to regulate "whether subpoenas duces tecum will be willingly obeyed or challenged." *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951). Thus, "it is permissible for the Attorney General to make a conclusive determination not to produce records and whether his subordinates in accordance with the order may lawfully decline to produce them in response to a subpoena duces tecum." *Cf. id.* at 419. "*Touhy* is part of an unbroken line of authority which directly supports

9

[the] contention that a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations." *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989).

A defendant's willing or inexplicable non-compliance with *Touhy* regulations is reason to quash a subpoena. *See, e.g., United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007) ("Neither the existence nor the application of the Touhy regulations deprived the defendant of any right. To begin with, the defendant made no attempt whatsoever to comply with the DHS regulations. Given this, he can hardly be heard to complain that the regulations caused him injury."); *United States v. Timms*, 844 F. App'x 658, 659–60 (4th Cir. 2021) ("Further, Timms does not offer any justification for his non-compliance with *Touhy*. As such, the district court did not abuse its discretion in quashing the subpoena."); *Gillette v. Warden Golden Grove Adult Corr. Facility*, 109 F.4th 145, 155 (3d Cir. 2024) ("Because the regulations barred the USAO from obeying the subpoena absent Gillette's compliance, and the regulations are valid, the District Court did not err.").

However, allowing a defendant's non-compliance with *Touhy* regulations to prevent government employees from testifying must be balanced against the defendant's Constitutional rights. "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. However, that right is not unlimited. It "does not attach to any witness the defendant wishes to call," and, instead, "a defendant must demonstrate that the witness he desires to have produced would testify "in his favor." *United States v. Moussaoui*, 382 F.3d 453, 471 (4th Cir. 2004) (citing U.S. Const. amend, VI and *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867 (1982)). The Supreme Court has explained that a defendant's Sixth Amendment right to compulsory process is only violated when

the excluded testimony "would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).

The same is true here; "a failure to disclose information under *Touhy* only violates the defendant's Sixth Amendment rights to present a defense where the defendant can show that the excluded testimony would have been both material and favorable to his defense." *United States v. Ritchie*, 734 F. App'x 876, 879 (4th Cir. 2018) (quoting *United States v. Guild*, 341 Fed.Appx. 879, 886 (4th Cir. 2009)). If "a defendant demonstrates that a witness can provide testimony material to his defense, then the government's interest in its evidentiary privilege must give way." *United States v. Rivera*, 412 F.3d 562, 569 (4th Cir. 2005). Once that happens, "the appropriate procedure is for the district court to order production of the evidence or witness and leave to the Government the choice of whether to comply with that order." *Moussaoui*, 382 F.3d at 474.

Under the applicable regulations, a defendant must "furnish[]" the DoJ with an "affidavit[]or, if that is not feasible, a statement" which "set[s] forth a summary of the testimony sought." 28 C.F.R. § 16.23(c). Once it has received such a request, the DOJ must "consider[] [w]hether such disclosure is appropriate under the rules of procedure . . . , and . . . [w]hether disclosure is appropriate under the relevant substantive law concerning privilege." 28 C.F.R. § 12.26(a). Following that consideration, the DoJ may "make [or not make] [such] disclosures." *Id.*

### B. Application

The government explains that because counsel for Defendant's communications, detailed above, do not comply with the procedural requirements and because the testimony is not appropriate under the regulations' factor test, the United States will not authorize Dr. Riggsbee to comply with the subpoena. As such, they have asked the court to quash the subpoena. The court agrees.

11

As the court explained at the pretrial conference, because Dr. Riggsbee's testimony "does not meet the thresholds for admissibility," given its "limited nature," the "the *Touhy* regulations are not overridden by any of the constitutional concerns." Trans. at 8. As the intended testimony is inadmissible under both the IDRA and the Federal Rules of Evidence, it is not material.

For those reasons and the reasons stated above, the court GRANTS the United States' Motion to Quash. DE 67. The subpoena is QUASHED.

### III. Defendant's *Pro Se* Motion for New Counsel

Finally, at the conclusion of the pretrial conference, Defendant *pro se* announced, "Yeah I would like to get a new lawyer." Trans. at 14. Following its discussion with Defendant, the court granted Defendant's request. Defendant's accusations regarding his attorney's services need not be repeated here; it will suffice to say that Defendant was no longer "communicating [with his attorney] in a way that will be helpful for trial." Trans. at 14.

Mr. Styers' representation of Defendant in this case is terminated. The court thanks Mr. Styers for his continued service in this district. The Office of the Federal Public Defender is ordered to appoint replacement counsel to represent Defendant. As the court told Defendant at the pretrial conference, this shall be Defendant's third and final court-appointed attorney. If Defendant cannot work with his next attorney, then Defendant will be permitted to represent himself.

To allow replacement counsel adequate time to prepare for this matter, Defendant's trial is CONTINUED. No later than one week after entering their notice of appearance, counsel for Defendant shall confer with the United States and submit mutually acceptable trial dates to the court's case manager. At that point, the court will enter an amended trial scheduling order. Additionally, the court's decisions in this order shall remain binding in this matter; short of exceptional circumstances, "there will be no fresh bites at any of the pretrial rulings." Trans. at

12

21. The court has determined that the ends of justice served by granting Defendant's motion outweigh the best interests of the public and Defendant in a speedy trial. Any delay occasioned by granting Defendant's motion shall therefore be excluded in computing Defendant's speedy-trial time. *See* 18 U.S.C. § 3161(h)(7).

### IV. Conclusion

The United States' Motion in Limine to Exclude Expert Psychological Testimony is GRANTED. DE 66. The United States' Motion to Quash Subpoena is GRANTED. DE 67. The subpoena of Dr. Riggsbee is QUASHED. Defendant's *pro se* request for new counsel is GRANTED. The trial in this matter is CONTINUED and any delay occasioned by that continuance is excluded from computing Defendant's speedy-trial time. Within one week of entering their notice of appearance, new counsel for Defendant shall confer with the United States and propose mutually acceptable dates for trial.

SO ORDERED this __16th__ day of March, 2026.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

Case 5:24-cr-00293-M-RJ     Document 70     Filed 03/16/26     Page 13 of 13