IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:24-CR-00293-M

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESSE NATHAN METCALF,<br><br>Defendant. | ORDER |

This matter comes before the court on Defendant's Motion for Judgment Notwithstanding the Jury Verdict. DE 89. Broadly, Defendant argues that because the Government's only evidence of his subjective intent was his prior bad acts, the court should enter a judgment of acquittal notwithstanding the jury's guilty verdict. *See generally* DE 89 at 1–11. As explained in greater detail below, a defendant's "other crimes, wrongs, or acts" may be "admissible for . . . proving . . . intent," and the court will not overturn a jury verdict because the Government used admissible evidence for its appropriate purpose. *See* Fed. R. Evid. 404(b)(2). Moreover, the court gave instructions regarding the Government's 404 evidence, DE 88 at 30, instructions as to the intent element of the crimes charged, DE 88 at 52, and repeated reminders of the Government's burden of proof, *see, e.g.,* DE 88 at 3, 4, 5, 17, 21, & 49. At no point did the court allow "the Government's burden [to be] converted to a reasonable person standard." DE 89 at 11. Accordingly, Defendant's Motion is DENIED. DE 89.

## I. Background

On December 25, 2019, officers with the Wake County Sherriff's Office responded to reports of a gunshot at a residence then shared by Defendant and his ex-wife. Defendant and his

ex-wife had, apparently, been in a domestic dispute that resulted in Defendant drawing a firearm and discharging it within inches of his ex-wife's head. When officers arrived at the scene, Defendant had barricaded himself inside the residence with his two children. As part of that process, Defendant placed firearms at all the home's windows. After an hour-long standoff with officers, Defendant was taken into custody without further incident. For the events on that day, Wake County prosecutors charged Defendant with felony discharging a firearm to incite fear and misdemeanor assault on a female, communicating threats, and resisting a public officer. K.F., an Assistant District Attorney ("ADA") assigned to the Wake County District Attorney's Domestic Violence Unit, prosecuted the case.

As that criminal matter proceeded, Defendant and his ex-wife also began divorce proceedings. Defendant, apparently, did not handle those proceedings very well, and engaged in a pattern of menacing conduct and communication towards his ex-wife. For that conduct, Wake County authorities arrested Defendant for witness intimidation, felony extortion, and misdemeanor stalking and communicating threats. Because she was the assigned prosecutor for the charges arising from Defendant's 2019 conduct, K.F. was also assigned to prosecute Defendant on the charges stemming from his conduct during the divorce proceedings.

Defendant, now incarcerated, then called his father to discuss K.F. and made an explicit threat to K.F.'s life—expressing his intent to blow K.F.'s brains out. Wake County prosecutors then charged Defendant with making a threat to kill a court officer. C.K., a different ADA with the domestic violence unit, took over Defendant's case. The various matters were consolidated for trial. During that trial, a Wake County Sherriff's Deputy informed C.K. that Defendant had verbally threatened to shoot C.K. upon his release from custody. Following the conclusion of his trial, Wake County prosecutors would also charge Defendant for that threat. The North Carolina

jury found Defendant guilty of discharging a firearm to incite fear, communicating threats, resisting a public officer, witness intimidation, extortion and stalking, and the state court sentenced him to two consecutive sentences of 16-29 months' imprisonment.

Over the next three years, Defendant made recorded jail phone calls to his father. During twelve of those phone calls, Defendant repeatedly and emphatically informed his father of his intention to kill his ex-wife and the two prosecuting district attorneys. Defendant's father lived in Texas, while Defendant made the phone calls from state prison in North Carolina. Based on his communication during those phone calls, the United States charged Defendant with twelve counts of transmitting a threat to injure in interstate commerce.

At Defendant's federal trial before this court, in addition to recordings of the relevant phone calls, the United States provided evidence in the form of testimony from the two Wake County ADAs and Defendant's ex-wife regarding the underlying events (i.e. the Christmas, 2019, incident, the divorce proceedings, and Defendant's past threatening communications). Defendant objected to the admission of any evidence regarding bad acts that did not form the basis of his federal charges. The court overruled that objection and admitted the evidence, explaining that "[i]t's intrinsic to the story of this trial[,] because this trial is about allegations that threats were communicated to genuinely harm somebody because they participated in the prior trials that resulted in [Defendant's] [state] conviction[s]." Transcript of Pretrial Conference at 9.

The court also twice gave the jury limiting instructions to inform the jury about the appropriate considerations of such evidence under Rule 404(b) of the Federal Rules of Evidence. First, after the introduction of this information, the court told the jury,

> [M]embers of the jury, you heard evidence indicating that the Defendant may have committed other acts or crimes that have not been charged here. You may consider this evidence only for its bearing if any on the question of the Defendant's intent, motive, opportunity, preparation, plan, knowledge, identity, absence of mistake, or absence of accident and for no other purpose. You may not consider this evidence as evidence of guilt of the crime for which the Defendant is now on trial. The fact that he has prior conviction is not evidence that he committed the crimes with which he has been charged. It may be motive. It may be absence of mistake. It may go to knowledge. But it is not evidence that he committed this crime. So, you may consider it only for the limited purpose for which it is offered, and the United States is offering it for a limited purpose.

Transcript of Trial Day 1 (7/28) at 130. Second, when the court gave the jury its final instructions, the court again reminded the jury,

> You have heard evidence indicating that the defendant may have committed other crimes, wrongs, or acts not charged here. You may consider this evidence only for its bearing, if any, on the question of the defendant's intent, motive, opportunity, preparation, plan, knowledge, identity, absence of mistake, and absence of accident and for no other purpose. You may not consider this evidence as evidence of guilt of the crime for which the defendant is now on trial.

DE 88 at 30.

Regarding the charged offenses' *mens rea* requirement, the court instructed the jury that "[t]o sustain its burden of proof . . . , the United States must prove . . . [t]hat the defendant subjectively intended the communication as a threat." DE 88 at 49; *see also Elonis v. United States*, 575 U.S. 723, 734–37 (2015) (holding that 18 U.S.C. § 875(c) necessarily requires criminal intent). The court provided further detail for this element, explaining that "the government must prove that the defendant transmitted the communication for the purpose of issuing a threat, or with knowledge that the communication would be viewed as a threat, or with conscious disregard of a substantial risk that the communication would be viewed as threatening violence." DE 88 at 52; *Counterman v. Colorado*, 600 U.S. 66, 69 (2023) (holding that a recklessness *mens rea* sufficiently

separates protected speech from unprotected threats under the First Amendment). Regarding that element, the United States made the following argument to the jury,

> And look, the law doesn't require you all to climb inside the Defendant's head. It just asks you to use your common sense. And common sense tells us that a person who repeatedly says he's going to shoot and kill specific people, describes in graphic detail how he's going to do it, insists he's serious as a heart attack, and continues making those threats month after month and never once backs away, common sense tells us that at the very least he consciously disregarded what the world would understand those threats to be.

Transcript of Trial Day 2 (7/29) at 49.

Also relevant here, the court repeatedly reminded the jury of the government's burden of proof. *See, e.g.,* DE 88 at 3("[I]n this trial, it is the government's obligation to produce proof beyond a reasonable doubt of the charge[s] in the Second Superseding Indictment."), 4 ("The government has the burden or obligation to prove to you beyond a reasonable doubt each of the essential elements of the crimes charged in the Second Superseding Indictment. The purpose of this trial is to determine whether the government can meet this burden."), 5 ("The burden or obligation, as you will be told many times during the course of this trial, is always on the government to prove beyond a reasonable doubt each and every element of the offenses charged."), 17 ("The law presumes a defendant to be innocent of the charges against him. I therefore instruct you that the defendant is to be presumed by you to be innocent throughout your deliberations until such time, if ever, you as a jury are satisfied that the government has proven the defendant's guilt beyond a reasonable doubt."), 21 ("If the government proves the defendant guilty of any charge beyond a reasonable doubt, say so. If the government fails to prove the defendant guilty of any charge beyond a reasonable doubt, say so."), & 49 ("To sustain its burden of proof for each of the offenses alleged in Counts One through Twelve, the United States must prove the following elements beyond a reasonable doubt . . . ."); *see also* Transcript of Trial Day 1 (7/28) at 52 ("No Defendant may be convicted unless the Government has proven each element of the crime beyond

a reasonable doubt."), 55 ("In a criminal trial, the Government carries the burden of proving the Defendant's guilt beyond a reasonable doubt."), & 61 ("It's one of the greatest things about our system is that we say we won't put anyone in prison unless we can get [twelve] members of our community to agree that the Government has proved that person's guilt beyond a reasonable doubt . . . .").

Following trial, the jury found Defendant guilty on all twelve counts. Defendant has now moved under Rule 29 of the Federal Rules of Criminal Procedure to set aside that jury verdict. DE 89.

## II. Governing Standards

Rule 29(c) of the Federal Rules of Criminal Procedure provides that, on a defendant's motion, a court may "set aside" a jury verdict and "enter an acquittal." Fed. R. Crim. P. 29(c). A defendant who challenges the sufficiency of the evidence under this Rule faces an "imposing burden." *United States v. Martin*, 523 F.3d 281, 288 (4th Cir. 2008) (citing *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997)). He must establish that "the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt." *Id.* (citing *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). Moreover, when reviewing the sufficiency of the evidence supporting a criminal conviction, the courts is "limited to considering whether 'there is substantial evidence, taking the view most favorable to the government, to support it.'" *Beidler*, 110 F.3d at 1067 (quoting *Glasser v. United States*, 315 U.S. 60, 80 (1942)).

In other words, the court must uphold the jury's verdict if, when viewed in the light most favorable to the government, there is sufficient evidence from which "any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997). Most importantly, the jury, not the court, "weighs the

credibility of the evidence and resolves any conflicts in the evidence presented." *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997); *see also United States v. Whyte*, No. 4:12-CR-00021-2, 2018 WL 521593, at *3 (W.D. Va. Jan. 23, 2018) ("As such, the court may not usurp the jury's exclusive function by weighing evidence, drawing inferences of fact, resolving evidentiary conflicts, or assessing credibility of witnesses.") (citation omitted). That means reversal of a jury's verdict of guilty is reserved for cases "where the prosecution's failure is clear." *Burks v. United States*, 437 U.S. 1, 17 (1978).

Under Rule 404(b) of the Federal Rules of Evidence, a defendant's "other crimes, wrongs, or acts," may by admitted "for . . . proving motive . . . [or] intent . . . ." Fed. R. Evid. 404(b)(2). "Rule 404(b) is viewed as 'an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition.'" *United States v. Young*, 248 F.3d 260, 271–72 (4th Cir. 2001) (quoting *United States v. Van Metre,* 150 F.3d 339, 349 (4th Cir.1998)). "To be admissible under Rule 404(b), the evidence must be (1) relevant to an issue other than the general character of the defendant, (2) necessary to prove an essential claim or element of the charged offense, and (3) reliable." *United States v. Sterling*, 860 F.3d 233, 246 (4th Cir. 2017) (citing *United States v. Siegel*, 536 F.3d 306, 317–19 (4th Cir. 2008)).

"Turning to the first Rule 404(b) factor, '[a] not-guilty plea puts one's intent at issue and thereby makes relevant evidence of similar prior crimes when that evidence proves criminal intent.'" *Id.* at 247 (quoting *United States v. Sanchez*, 118 F.3d 192, 196 (4th Cir. 1997)). The court must make a specific interpretation in any case that proposed Rule 404(b) evidence is relevant to intent. *See United States v. Hernandez*, 975 F.2d 1035, 1040 (4th Cir. 1992) ("The evidence is necessary and admissible where it is an essential part of the crimes on trial or where it furnishes part of the context of the crime." (cleaned up)). Broadly, "[e]vidence is relevant if it has

any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." Fed. R. Evid. 401 (cleaned up). In the specific case of 404(b) evidence, the evidence "must be sufficiently related to the charged offense," and, as the Fourth Circuit has explained, "[t]he more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act." *United States v. McBride*, 676 F.3d 385, 397 (4th Cir. 2012) (citations omitted).

The next two factors are more straightforward. "[E]vidence is necessary when it is probative of an essential claim or an element in a manner not offered by other evidence available to the government." *Sterling*, 860 F.3d at 247 (cleaned up). Importantly, the Fourth Circuit has declined to adopt an approach favored by other circuits, in which "evidence of other crimes may not be offered when the defendant unequivocally denies committing the acts charged in the indictment." *Hernandez,* 975 F.2d at 1040. Thus, "Rule 404(b) evidence may still be relevant to prove intent or knowledge, even if the defendant does not base his defense on scienter." *Sterling*, 860 F.3d at 247 (citation omitted). Finally, for evidence to be reliable, it "must be sufficient to allow the jury to reasonably conclude that the acts occurred and that the defendant was the actor." *Id.* at 248 (citing *United States v. Powers*, 59 F.3d 1460, 1467 (4th Cir. 1995)) (quoting *Huddleston v. United States*, 485 U.S. 681, 689 (1988)) (cleaned up).

Additionally, evidence that would otherwise fall under the auspices of Rule 404(b) is not 404(b) "other act" evidence if the acts are "intrinsic" to the crime charged. *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010). "Other acts are intrinsic when they are 'inextricably intertwined[,] or both acts are part of a single criminal episode[,] or the other acts were necessary preliminaries to the crime charged.'" *Id.* (citation omitted). "Evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the

witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Id.* (cleaned up). In other words, notwithstanding the limitations of Rule 404(b), evidence of a defendant's prior bad acts may still be admitted if the evidence is necessary to tell the complete story of the conduct for which the defendant has been charged.

## III. Discussion

Before addressing Defendant's Motion, the court reiterates its finding that the evidence of Defendant's prior bad acts, i.e. his conduct on December 25, 2019, and subsequent threats to his ex-wife and assigned prior bad acts, is admissible under Rule 404(b). As the court explained at the pretrial conference, Defendant's prior bad acts are "intrinsic to the story of this trial[,] because this trial is about allegations that threats were communicated to genuinely harm somebody because they participated in the prior trials that resulted in [Defendant's] [state] conviction[s]." Transcript of Pretrial Conference at 9. As the Fourth Circuit stated in *Lighty*, evidence of Defendant's prior conduct was "inextricably intertwined with the evidence regarding the charged offense" because "it form[ed] an integral and natural part of the [victims'] accounts of the circumstances surrounding the offenses." *See. Lighty*, 616 F.3d at 352.

Beyond its intrinsic nature, this evidence was also admissible for the jury's consideration of Defendant's intent or motivation. *See* Fed. R. Evid. 404(b). Because Defendant pled not guilty, he "put[] [his] intent at issue and thereby ma[de] relevant evidence of similar prior crimes . . . .'" *Cf. Sterling*, 860 F.3d at 247; *see also Hernandez*, 975 F.2d at 1039 ("It is a truism that a plea of 'not guilty' to a charge requiring intent places that mental state in issue and that the state may offer evidence of other bad acts to address that issue."). In this case, the evidence of Defendant's prior conduct was particularly relevant to the issue of his intent because the prior conduct was both "sufficiently related to the charged offense" and exceedingly similar to "the charged conduct in . . .

pattern[] or state of mind." *Cf. McBride*, 676 F.3d at 397. That Defendant previously shot a gun at his wife (as he stated he would do in the communications at issue in this trial), threatened to shoot his ex-wife and assigned prosecutors in the past, and was convicted for each of those offenses is all relevant to his continuing intention to threaten those people. Likewise, the evidence was "necessary" because no other evidence told the complete story or provided the necessary context of Defendant's underlying motivations. *See Sterling*, 860 F.3d at 247 (cleaned up). Finally, the evidence was reliable because it "allow[ed] the jury to reasonably conclude that the acts occurred and that the defendant was the actor." *Id.* at 248. Indeed, Defendant did not contest the factual accuracy of the allegations.

Moving to the instant Motion, Defendant makes one principal argument to justify setting aside the jury's verdict: that "the use of the propensity or prior bad acts . . . to prove subjective intent was improper" because it "subvert[ed] the Government's continuing obligation to prove each element beyond a reasonable doubt" and allowed the Government to "use[] prior bad acts [where] there was no additional evidence of subjective intent." DE 89 at 1. Defendant expands upon this argument, contending that by relying solely on "prior litigation and criminal matters," the Government failed to provide "proof of Defendant's subjective intent" and "convert[ed] the burden of proof to a reasonable person standard." DE 89 at 10. That argument fails for three reasons.

First, Defendant is incorrect that the government's only evidence of his intent was prior bad acts. The government played all twelve of the phone calls which gave rise to the charges against him here. In those phone calls, Defendant repeatedly, graphically, and specifically described his plans to kill the two prosecutors and his ex-wife. The repetition and specificity, alone, would be enough for a reasonable juror to conclude Defendant intended to make or at least

disregarded the risk that his communications would be perceived as threats.[1] Likewise, that is specific with the government's closing argument that "a person who repeatedly says he's going to shoot and kill specific people, describes in graphic detail how he's going to do it, insists he's serious . . . , and continues making those threats . . . [has] consciously disregarded what the world would understand those threats to be." Transcript of Trial Day 2 (7/29) at 49.

Second, Defendant is incorrect that the court's instructions do not defeat his argument. *See* DE 89 at 10. The jury is presumed to have followed the court's instructions. *Jones v. United States*, 527 U.S. 373, 394 (1999); *see also Greer v. Miller*, 483 U.S. 756, 767 n.8 (1987) ("We normally presume that a jury will follow an instruction . . . unless there is an overwhelming probability that the jury will be unable to follow the court's instructions . . . and a strong likelihood that the effect of the evidence would be devastating to the defendant." (citations omitted) (internal quotations omitted)). Here, the court instructed the jury that it could only consider evidence of Defendant's prior bad acts "for its bearing if any on the question of the Defendant's intent, motive, opportunity, preparation, plan, knowledge, identity, absence of mistake, or absence of accident and for no other purpose." Transcript of Trial Day 1 (7/28) at 130; DE 88 at 30. The court also instructed the jury that "the government must prove that the defendant transmitted the communication for the purpose of issuing a threat, or with knowledge that the communication would be viewed as a threat, or with conscious disregard of a substantial risk that the communication would be viewed as threatening

---

[1] Indeed, the audio of those phone calls only strengthens this conclusion. In the calls, Defendant repeatedly and in graphic detail discussed his plans and/or fantasies to kill his ex-wife and former prosecutors. Based on those phone calls, and particularly Defendant's tone and specificity, a reasonable juror could easily have concluded that Defendant had subjectively intended to make true threats against those who he perceived as having wronged him. In the court's estimation, the evidence of Defendant's prior bad acts would merely have provided necessary context by illustrating Defendant's motivation, but the phone calls alone would have allowed a reasonable juror to find Defendant guilty.

violence." DE 88 at 5. And the court *repeatedly* reminded the jury of the Government's "burden or obligation to prove . . . beyond a reasonable doubt each of the essential elements of the crimes charged in the Second Superseding Indictment." *See, e.g.,* DE 88 at 5. The court will not now conclude, without any affirmative evidence, that the jury disregarded the court's instructions, relieved the Government of its burden of proof, substituted a negligence *mens rea*, and improperly considered 404(b) evidence for propensity purposes. The court will, instead, presume, consistent with the Supreme Court's guidance, that the jury followed its instructions.

Third, and finally, the court can find no legal support for granting Defendant's Motion. Defendant's argument essentially boils down to the following: because the jury only considered his prior bad acts in making its intent determination, the court should set aside the jury's verdict. But that argument necessarily asks the court to overturn the jury's verdict because it *considered admissible evidence for its appropriate purpose*. Defendant has not identified any case in which a court has so ruled, and the court has found none in its own research. That is not surprising.

## IV. Conclusion

For the foregoing reasons, Defendant's Rule 29 Motion for Judgment Notwithstanding the Jury Verdict is DENIED. DE 89.

SO ORDERED this 20th day of August, 2026.

Richard E. Myers II

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE